**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA

      Plaintiff,

  vs.                                                                          NO. 10-CR-49 WJ

MARIO OCHOA-OLIVAS,

      Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING GOVERNMENT'S OBJECTIONS TO PRESENTENCE REPORT AND DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE

THIS MATTER comes before the Court on the United States' Objections to the Presentence Report (Doc. 49) and the Defendant's Motion for a Downward Departure from the Sentencing Guidelines (Doc. 52).  The United States asks this Court to deny Defendant a two-level reduction for acceptance of responsibility under the Guidelines because the Defendant did not plead guilty to the felony illegal reentry offense with which he was charged until the morning of trial.  The Defendant, on the other hand, argues that the Presentence Report ("PSR") significantly overrepresents Defendant's criminal history and asks this Court to depart downward from the applicable Guidelines sentencing range.  The Court, in its discretion, agrees with the United States that a two-level reduction for acceptance of responsibility is not appropriate because the Defendant plead guilty the morning of trial and therefore SUSTAINS the United States' Objections to the PSR.  Furthermore, the Court finds that the PSR correctly represents Defendant's criminal history and therefore DENIES Defendant's Motion for

Downward Departure for overrepresentation of criminal history.

## BACKGROUND

On May 3, 2010, at approximately 9:00 a.m. on the morning of trial, Defendant Mario Ochoa-Olivas pled guilty to illegally reentering the United States after being deported in violation of 8 U.S.C. § 1326(a) and (b).  At the time that Defendant pled guilty, prospective jurors were waiting outside the courtroom doors to be seated for voir dire, and the Government's five witnesses were either present in the courtroom or en route to the courthouse.  The PSR calculated Defendant's adjusted offense level as 22 and his criminal history category as V, resulting in an advisory Guidelines imprisonment range of 77 to 96 months.  In calculating Defendant's offense level, the PSR awarded Defendant a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a).  The PSR noted that Defendant pled guilty to the offense and that he expressed regret for entering the United States.

In calculating Defendant's criminal history category, the PSR gave Defendant three points for each of his three prior felonies.

- In 1988, Defendant was convicted in Arizona state court of one count of selling marijuana and one count of possession of marijuana with intent to sell.  Defendant was sentenced to one year imprisonment and seven years probation.[1]
- In 2001, Defendant was convicted in the United States District Court for the District of Kansas of illegal reentry after deportation.  Defendant pled guilty and was sentenced to 41 months imprisonment and 36 months supervised release.

---

[1] Typically, felony convictions more than fifteen years old do not count towards a defendant's criminal history.  In this case, however, the Defendant's probation was revoked in 1994 and he was sentenced to 7 years imprisonment.  Consequently, under U.S.S.G. § 4A1.2(k), this conviction counts towards Defendant's criminal history.

- In 2004, Defendant was convicted in the United States District Court for the District of Arizona of illegal reentry after deportation. Defendant pled guilty and was sentenced to 51 months imprisonment and 36 months supervised release.

Defendant also received an additional three criminal history points pursuant to U.S.S.G. §§ 4A1.1(d) & (e) (known as "recency points"). The PSR utilized these provisions and added two points because the Defendant committed the instant illegal reentry offense while serving a term of supervised release for his 2004 illegal reentry conviction. The PSR added an additional point because the instant offense was committed less than two years after Defendant was released from custody from his 2004 conviction. In total, then, the Defendant received 12 criminal history points which corresponds to a criminal history category of V.

## SENTENCING STANDARD

After *United States v. Booker*, 543 U.S. 220 (2005), courts are no longer required to sentence defendants within the prescribed Guidelines range. However, a district judge must still begin all sentencing proceedings by correctly calculating the applicable Guidelines range. *Gall v. United States*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Id.* The initial calculation includes any upward or downward departures warranted under the Guidelines. After calculating the Guidelines range, the judge may decide to vary outside the Guidelines range. Here, the United States and Defendant disagree over the applicable Guidelines range.

## DISCUSSION

**I.      Acceptance of Responsibility**

The Government objects to awarding Defendant a two-level reduction for acceptance of

responsibility pursuant to U.S.S.G. § 3E1.1(a). That provision permits a court to decrease a defendant's offense level by two levels "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." The commentary to this provision states that the timeliness of the defendant's conduct in manifesting an acceptance of responsibility is a factor the court may consider in deciding whether to grant the reduction. U.S.S.G. § 3E1.1, cmt. n.1(h).

The Government argues that a two-level reduction for acceptance of responsibility is not warranted here because the Defendant did not plead guilty until the morning of trial. The Government points out that: (1) it had already expended significant time and energy preparing for trial; (2) the government had incurred all of the expenses associated with the trial, including travel and lodging for five witnesses (two of whom traveled from California); and (3) the Court had summoned about 40 potential jurors for the trial (some of whom had to drive several hours to reach Albuquerque). The Government also argues that such a last-minute plea casts doubt on the sincerity of the Defendant's acceptance of responsibility.

The Court agrees that a two-level reduction for acceptance of responsibility is not warranted in this case. A defendant who pleads guilty is not entitled to an adjustment for acceptance of responsibility as a matter of right. U.S.S.G. § 3E1.1, cmt. n.3; *United States v. Clark*, 415 F.3d 1234, 1238 (10th Cir. 2005). District courts have broad discretion to determine whether a defendant's conduct truly warrants a reduction for acceptance of responsibility. *United States v. Quarrell*, 310 F.3d 664, 682 (10th Cir. 2002) ("Because the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility, his or her decision is entitled to great deference on review.") (internal quotations omitted). Here, a two-level reduction for acceptance of responsibility is not appropriate because the Defendant waited until the morning of trial to plead guilty. Given the strength of the Government's case, the

Defendant's attorney orally represented to the Court that he had spent considerable time and effort attempting to convince the Defendant to plead guilty in a timely fashion.  The Government, for its part, was amenable to seeking a continuance if the Defendant needed more time to consider a guilty plea.  Despite the efforts of both counsel, the Defendant steadfastly asserted that he intended to go to trial.  It was not until the morning of trial—minutes before voir dire was scheduled to begin—that the Defendant decided to plead guilty.  At that point, all five of the Government's witnesses had already traveled to Albuquerque for the trial.  Some of the witnesses came from other parts of New Mexico while two witnesses flew in from California.  In addition, approximately forty jurors had been summoned and were waiting for the trial to begin.  Because the Northern Division of the District of New Mexico draws potential jurors from such a large geographic area, many of these jurors had to drive several hours in order to reach Albuquerque.  Finally, numerous other courts have found that a defendant's untimely guilty plea is sufficient reason to deny that defendant a reduction for acceptance of responsibility.  *See, e.g.*, *United States v. Montero*, 336 Fed. App'x. 941, 942 (11th Cir. 2009) (unpublished) (upholding sentencing court's refusal to grant defendant any points for acceptance of responsibility solely because the defendant did not plead guilty until the morning of trial); *United States v. Malone*, 122 Fed. App'x. 867, 868 (8th Cir. 2005) (same).  As one court noted:

> [The defendant's] last-minute plea alone was a sufficient basis for the district court to deny an acceptance-of-responsibility reduction. A judge may determine that a reduction under § 3E1.1 is not warranted when a defendant waits until the eleventh hour to enter a plea. . . . This court consistently has affirmed a denial of such a reduction in cases where the defendant waited until the final days before trial to enter a guilty plea. . . . A last-minute plea thwarts the main purpose of § 3E1.1, which is to avoid wasting governmental and judicial resources preparing for trials that never happen. . . . Such tactics also suggest that the defendant is holding out for a better deal rather than accepting responsibility from the outset.

*United States v. Chairs*, 360 Fed. App'x. 668, 671-72 (7th Cir. 2010) (unpublished) (internal

citations omitted). Because the Defendant waited until the morning of trial to plead guilty, both parties and this Court had to expend considerable time and resources preparing for trial.[2] Accordingly, the Court finds that a two-level reduction for acceptance of responsibility is not appropriate in this case and SUSTAINS the United States' objections to the PSR. Consequently, the Defendant's total adjusted offense level is 24 instead of 22.

## II.     Criminal History Category

Next, the Defendant argues that the PSR significantly overrepresents his criminal history. Specifically, the Defendant objects to the additional three criminal history points (known as "recency points") which he received pursuant to §§ 4A1.1(d) & (e). Under these provisions, the Defendant received an additional two points because he committed the instant illegal reentry offense while serving a term of supervised release for his 2004 illegal reentry conviction. The Defendant also received an additional point because he committed the instant offense less than two years after being released from custody from his 2004 conviction. In practical effect, the Defendant argues, his 2004 illegal reentry conviction adds six points to his total criminal history points—three for the commission of the felony offense itself and three "recency" points under §§ 4A1.1(d) & (e). He also notes that the United States Sentencing Commission recently voted to amend the Guidelines to delete § 4A1.1(e). While this amendment will not take effect until November 1, 2010 (assuming Congress does not overrule the Commission), the Defendant asks

---

[2] The Defendant argues that, by pleading guilty on the morning of trial, he at least saved the Government from expending additional time and resources. As the Government notes, however, Defendant's trial for illegal reentry would have likely lasted only one day. By waiting until the day of trial, the Government and the Court had to expend essentially the same amount of energy and resources as they would have had Defendant gone to trial. Functionally, as the Government notes, the Defendant did not relieve the Government or this Court of any real burden.

this Court to give him the benefit of the proposed amendment and decline to impose the additional point pursuant to § 4A1.1(e).

As an initial matter, the Court finds that giving the Defendant the benefit of the proposed amendment would not, in fact, change his advisory Guidelines sentence. Defendant was only assessed one "recency" point pursuant to § 4A1.1(e). The other two "recency" points were assessed under § 4A1.1(d), which is not subject to any proposed amendment. Accordingly, even if this Court deleted one point from the Defendant's criminal history calculation, the Defendant would still have eleven criminal history points and still fall squarely within criminal history category V. Deleting one point from Defendant's criminal history score would have no effect on his applicable Guidelines range.

More broadly, the Court does not believe that a criminal history category of V overrepresents Defendant's criminal history. Defendant does not dispute that the PSR correctly calculated his criminal history under the applicable Guidelines. Rather, Defendant objects generally to receiving a criminal history category of V when he has committed no felonies other than immigration offenses in the past twenty-three years. *See* U.S.S.G. § 4A1.3(b)(1) ("If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.") Felony reentry offenses, while less serious than other felonies, still deserve a significant sentence—particularly in a case such as this when the Defendant has repeatedly reentered the United States illegally. According to the PSR, Defendant has been deported seven times. The instant offense is Defendant's third illegal reentry conviction. Furthermore, while the 1988 felony conviction for the sale of marijuana is more than twenty years old, the Defendant repeatedly violated his probation. It was

those violations, rather than the conviction itself, which triggered the Guidelines provision assessing criminal history points.  The Court notes that the Defendant is his own worst enemy.  By repeatedly entering the United States illegally and repeatedly violating the terms of his supervised release by committing new criminal violations, the Defendant has increased his criminal history points and elevated himself into criminal history category V.  A criminal history category of V does not overrepresent Defendant's criminal history.  Accordingly, the Court DENIES Defendant's motion for a downward departure on this basis.

## CONCLUSION

For the foregoing reasons, the Court SUSTAINS the United States' Objections to the Presentence Report (Doc. 49) and DENIES the Defendant's Motion for a Downward Departure (Doc. 52).  With a total adjusted offense level of 24 and a criminal history category of V, the Defendant is facing an advisory Guidelines sentence of 92 to 115 months.  The Court will set a sentencing hearing date to consider any requests for variances pursuant to 18 U.S.C. § 3553(a)(1-7) and pronounce sentence.

**SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE